UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

TAMMIE R. WILBER,

                 Plaintiff,        17-CV-621(MAT)

        v.                         **DECISION**
                                           **and ORDER**
COMMISSIONER OF SOCIAL SECURITY,

                 Defendant.
_____

## INTRODUCTION

Tammie R. Wilber, ("Plaintiff"), who is represented by counsel, brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). This Court has jurisdiction over the matter pursuant to 42 U.S.C. § 405(g). Presently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Dkt. ##12, 16.

## BACKGROUND

### A. Procedural History

Plaintiff filed applications for DIB and SSI on March 5, 2013, alleging disability beginning June 15, 2012, based on arthritis, post-traumatic stress disorder ("PTSD"), seizure disorder, chronic obstructive pulmonary disease ("COPD"), depression, and anxiety.

T. 84, 188.[1] Plaintiff's application was denied, and she requested a hearing before an Administrative Law Judge ("ALJ"). T. 114-15.

ALJ Donald McDougall conducted a hearing on June 26, 2015, where Plaintiff testified with counsel. T. 44-82. Following the hearing, Plaintiff's case was transferred to ALJ Michael Devlin due to ALJ McDougall's retirement. T. 24.

On December 1, 2015, ALJ Devlin issued a decision finding Plaintiff not disabled. T. 21-43. Plaintiff requested a review of the ALJ's decision, which the Appeals Council denied. T. 1-5, 154-56. The ALJ's determination thus became the final decision of the Commissioner subject to judicial review under 42 U.S.C. § 1383(c)(3). This action followed. Dkt. #1.

The issue before the Court is whether the Commissioner's decision that Plaintiff was not disabled is supported by substantial evidence and free of legal error. See Pl. Mem. (Dkt. #12-1) 23-29; Comm'r Mem. (Dkt. #16-1) 18-29.

**B. The ALJ's Decision**

In applying the familiar five-step sequential analysis, as contained in the administrative regulations promulgated by the Social Security Administration ("SSA"), see 20 C.F.R. §§ 404.1520, 416.920; Lynch v. Astrue, No. 07-CV-249, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008) (detailing the five steps), the ALJ found: (1) Plaintiff did not engage in substantial gainful activity since

---

[1] "T.__" refers to pages of the administrative record. Dkt. #9.

2

her onset date; (2) she had the severe impairments of osteoarthritis of the thumb, bilateral shoulder bursitis, rotator cuff sprain and strain, right ankle sprain and strain, cervical disc displacement without myelopathy, and migraine headaches; (3) her impairments did not meet or equal the Listings set forth at 20 C.F.R. § 404, Subpt. P, Appx. 1. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work with additional limitations: Plaintiff could perform work requiring no more than frequent use of the hands or wrists, no exposure to temperature extremes, or extremes of fumes, dusts, gases, or other respiratory irritants, Plaintiff was limited to jobs allowing her to change positions for one to two minutes every one-half hour, and she could not climb ropes, ladders, or scaffolds, Plaintiff could not be exposed to heights or dangerous, moving machinery, and she could only occasionally balance, stoop, crouch, and climb stairs and ramps and could never kneel or crawl; (4) Plaintiff could not perform her past relevant work as a waitress; and (5) relying upon on vocational expert testimony, the ALJ determined that a person with Plaintiff's age, education, work experience, and RFC could make a successful adjustment to unskilled work existing in significant numbers in the national economy, including parking lot cashier and small products assembler. The ALJ concluded that Plaintiff was not disabled under the Act. T. 26-39.

**DISCUSSION**

**A. Scope of Review**

A federal court should set aside an ALJ decision to deny disability benefits only where it is based on legal error or is not supported by substantial evidence. Balsamo v. Chater, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003) (internal quotation marks omitted).

**B. Step Two Analysis**

Plaintiff first contends that the ALJ failed to consider her mental impairments as "severe" and failed to develop the record. Pl. Mem. 22-24.

At step two of the five-step analysis, the ALJ must consider a claimant's medically determinable impairments and decide whether they are "severe." A "severe" impairment is "one that significantly limits a claimant's ability to perform basic work activities," such as "walking, standing, sitting, lifting, [etc.], [c]apacities for seeing, hearing, and speaking, and [u]nderstanding, carrying out, and remembering simple instructions." Faison v. Berryhill, No. 16-CV-6044, 2017 WL 3381055, at *2 (W.D.N.Y. Aug. 5, 2017) (internal quotations and citations omitted). "It is the claimant's burden to show at step two that she has a severe impairment." Rye v. Colvin, No. 14-CV-170, 2016 WL 632242, at *3 (D. Vt. Feb. 17,

4

2016) (internal quotation omitted). "The mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." Ryan v. Colvin, No. 15-CV-74S, 2017 WL 2240256, at *3 (W.D.N.Y. May 23, 2017).

A step two error is not reversible and does not necessitate remand where the record is devoid of evidence that the allegedly omitted impairments were severe. Id. at *4 (declining to remand where the plaintiff did not "specify why each of these impairments [that he contended were omitted at step two] meets the regulatory definition of a 'severe' impairment").

In concluding that Plaintiff's depression and anxiety were not severe, the ALJ discussed the mental status examination findings of her treating providers and cited the examination findings that were inconsistent with significant mental limitations. T. 30. For example, mental status examinations routinely found that Plaintiff presented herself in an appropriate fashion, made good eye contact, and spoke with logical, coherent, and goal-directed speech. T. 30, 287, 308, 314, 317, 320, 330, 336, 632, 648. Plaintiff's counselors, Ms. Haseley and Ms. MacDougall, repeatedly observed that she was cooperative and interested, with good insight and judgment, and that she could attend and maintain focus. T. 30, 287, 298, 302, 305, 308, 314, 323-24, 509, 496, 499-500, 503, 512, 518, 526, 535, 539, 543, 550, 559, 565, 573, 577, 586, 589, 600, 605,

5

608, 614, 628, 632, 641, 646, 648. At multiple sessions, Ms. MacDougall assessed Plaintiff's mood as mildly depressed or anxious. T. 314, 317, 320, 330, 336, 648. Her mood was described as euthymic at other counseling sessions. T. 523, 548, 623.

At a July 2013 medication management appointment, psychiatrist Dr. Lopez observed that "[e]xcept for some degree of tearfulness, she is doing well". T. 283. The progress notes from the Niagara County Department of Mental Health indicate that her GAF,[2] although not determinative on the question of severity, was consistently assessed at 55-60, indicating moderate symptoms or moderate difficulty in social or occupational functioning. T. 278-287, 302-337, 590-648.

Consultative psychologist Dr. Ippolito concluded that, despite dysthymic mood and tearful affect upon examination, Plaintiff's psychiatric symptoms were not sufficiently significant to interfere with her ability to function on a daily basis. T. 31, 352.

Counselor Laura Haseley's observations of Plaintiff from December 2014 through May 2015 indicated cheerful mood, open and cooperative attitude, and good judgment. T. 496, 500, 503, 509, 512, 518, 525. Plaintiff's symptoms of depression were reported as being "okay," "in control," and when her anxiety worsened, she

---

[2] The Global Assessment of Functioning is a rating of overall psychological functioning on a scale of 0 to 100. See Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed., text revision, 2000) ("DSM-TR-IV"). The most recent edition of the DSM eliminated the use of the GAF scale. See Mainella v. Colvin, No. 13-CV-2453(JG), 2014 WL 183957, at *5 (E.D.N.Y. Jan. 14, 2014).

6

requested Xanax, which appeared to help in recent sessions. T. 505, 515, 530. At a January 2015 appointment, for example, Plaintiff told Ms. Conboy that she was "doing better now" and that medication was helping improve her mental symptoms "tremendously.". T. 523.

Plaintiff is correct in that the record contains over 200 pages of psychiatric notes. Pl. Mem. 22. However, the majority of the examination findings therein are benign and/or unremarkable. Under these circumstances, substantial evidence supports the ALJ's determination that Plaintiff's mental symptoms were not severe. T. 29-33.

In sum, the Court finds that substantial evidence supports the ALJ's conclusion that Plaintiff's mental symptoms were not severe within the meaning of the regulations.

**C.  SSR 06-03P**

Plaintiff avers that the ALJ failed to properly evaluate the opinion of her treating mental health counselor pursuant to Social Security Ruling ("SSR") 06-03P. Pl. Mem. 28-32.

At the time the ALJ decided Plaintiff's claim in December, 2015, he was required to evaluate opinions from non-acceptable medical sources based on several factors to the extent they were applicable under the particular facts of the case. See SSR 06-03p, 2006 WL 2329939, at *4-5 (S.S.A. 2006). Those included: how long the source had known and how frequently the source had seen the

7

claimant; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the claimant's impairment(s); and any other factors that tend to support or refute the opinion. Id.[3]

Laura Haseley, Licensed Master Social Worker with the Niagara County Department of Mental Health, filled out a Form Mental Impairment Questionnaire for Plaintiff that indicated a "fair to poor" prognosis with impairments lasting at least twelve months; that Plaintiff would be absent from work more than three times a month; and that she had poor or no ability to function in the majority of abilities and aptitudes to do unskilled work, such as carrying out short and simple instructions, maintain attention for two hour segments, sustain an ordinary routine without special supervision, and perform at a consistent pace without an unreasonable number and length of rest periods. T. 489-94. Ms. Haseley noted that the clinical findings supporting her assessed limitations as "outcome measures taken every 6 months show this impairment." T. 492.

The ALJ here appropriately considered that Ms. Haseley's restrictive assessment was inconsistent with the examination

---

[3] SSR 06-03p was rescinded effective March 27, 2017. See 82 Fed. Reg. 16,869 (April 6, 2017).

findings of record. T. 32, 489-94. As the ALJ discussed at length in his decision, the mental status examination findings of Plaintiff's treating sources were inconsistent with severe mental limitations of the type assessed by Ms. Haseley. T. 29-30. For example, while Ms. Haseley indicated in her questionnaire that Plaintiff had a "poor" or no ability to carry out even very short and simple instructions or perform tasks at a consistent pace, T. 32, 492, Ms. Haseley's mental status examinations, and those of her predecessor Ms. MacDougall, contradict these assessments. See T.30, 287, 298, 302, 305, 308, 314, 323-24, 496, 499-500, 503, 509, 512, 518, 526, 535, 539, 543, 550, 559, 565, 573, 577, 586, 589, 600, 605, 608, 614, 628, 632, 641, 646, 648 (observing good memory, good judgment, and the ability to attend and maintain focus during mental status examination). Inconsistency with the record as a whole is an important factor suggesting that an opinion deserves less weight. See 20 C.F.R. § 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). The ALJ thus properly considered and afforded little weight to Ms. Haseley's opinion that Plaintiff had extreme limitations in many areas of mental functioning because her assessments were notably inconsistent with the examination findings in the record. T. 32, 489-94.

In a related argument, Plaintiff contends that the ALJ should have re-contacted Ms. Haseley for additional information about her opinions to the extent that her assessment was inconsistent with her own treatment notes. Pl. Mem. 32. Even assuming Ms. Haseley was a treating physician for purposes of Plaintiff's motion, "[t]he mere fact that medical evidence is conflicting or internally inconsistent does not mean that an ALJ is required to re-contact a treating physician. Rather, because it is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution, the ALJ will weigh all of the evidence and see whether it can decide whether a claimant is disabled based on the evidence he has, even when that evidence is internally inconsistent." Micheli v. Astrue, 501 Fed. Appx. 26, 29-30 (2d Cir. 2012). An ALJ may properly discount even a treating physician's opinion due to its inconsistency, among other things, the source's own treatment notes. See Monroe v. Colvin, 676 Fed. Appx. 5, 7-8 (2d Cir. 2017). As explained above, that is what the ALJ has done here.

The Court has considered Plaintiff's remaining argument and finds it to be without merit.

For all of these reasons, the ALJ's determination is free of legal error and is supported by substantial evidence in the record.

## **CONCLUSION**

For the foregoing reasons, the Court finds that the Commissioner's decision is not legally flawed and is based on substantial evidence. Accordingly, it is affirmed. The Commissioner's motion for judgment on the pleadings is granted, and Plaintiff's motion for judgment on the pleadings is denied. The Clerk of Court is directed to close this case.

ALL OF THE ABOVE IS SO ORDERED.

S/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
October 29, 2018